No. 13-17131

———————————————————————————————

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

———————————————————————————————

ANIMAL LEGAL DEFENSE FUND,

Plaintiff-Appellant,

v.

UNITED STATES FOOD AND DRUG ADMINISTRATION,

Defendant-Appellee.

———————————————————————————————

On Appeal from the United States District Court
for the Northern District of California

———————————————————————————————

RESPONSE TO PETITION FOR REHEARING EN BANC

———————————————————————————————

BENJAMIN C. MIZER
 *Principal Deputy Assistant Attorney
 General*

BRIAN STRETCH
 *United States Attorney*

MICHAEL S. RAAB
 *(202) 514-4053*
LINDSEY POWELL
 *(202) 616-5372*
 *Attorneys, Appellate Staff*
 *Civil Division, Room 7237*
 *U.S. Department of Justice*
 *950 Pennsylvania Ave., NW*
 *Washington, DC 20530*

# TABLE OF CONTENTS

**Page:**

INTRODUCTION AND SUMMARY ........................................................ 1

STATEMENT ................................................................................. 2

ARGUMENT ................................................................................. 7

    There Are No Disputed Issues of Material Fact, and Summary
    Judgment for the Government Was Thus Appropriate Under
    Any Standard ............................................................................ 7

CONCLUSION ............................................................................... 15

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:** **Page(s):**

*Critical Mass Energy Project v. Nuclear Regulatory Comm'n,*
  975 F.2d 871 (1992) (en banc) ............................................................... 14

*Frazee v. U.S. Forest Serv.,*
  97 F.3d 367 (9th Cir. 1996) ............................................................. 3, 14

*Glick v. Edwards,*
  803 F.3d 505 (9th Cir. 2015) ................................................................. 13

*Lion Raisins, Inc. v. Department of Agric.,*
  354 F.3d 1072 (9th Cir. 2004) ...................................................... 1, 2, 5, 9

*Maricopa Audubon Soc'y v. U.S. Forest Serv.,*
  108 F.3d 1082 (9th Cir. 1997) ................................................................. 7

*National Parks & Conservation Ass'n v. Morton,*
  498 F.2d 765 (D.C. Cir. 1974) .............................................................. 14

*New Hampshire Right to Life v. Department of Health & Human Servs.,*
  136 S. Ct. 383 (2015) (dissent from denial of cert.) ............................... 15

*Wolf v. CIA,*
  473 F.3d 370 (D.C. Cir. 2007) ................................................................. 6

**Statutes:**

5 U.S.C. § 552(b)(3) ................................................................................. 3

5 U.S.C. § 552(b)(4) ................................................................................. 2

5 U.S.C. § 552(b)(6) ................................................................................. 3

**Other Authorities:**

U.S. Br. in Opp., *New Hampshire Right to Life v. Department of Health & Human Servs.*, 136 S. Ct. 383 (2015) (No. 14-1273) 2015 WL 4550358 ............... 14

## INTRODUCTION AND SUMMARY

Further review is unwarranted in this case because the government is entitled to summary judgment regardless of the standard of review applied. The district court did not identify any disputed issues of material fact, nor did it purport to make any factual findings. Although plaintiff submitted declarations to support its view that the redacted information is not confidential within the meaning of Freedom of Information Act (FOIA) Exemption 4, the substance of those declarations does not conflict in any material respect with the detailed and specific evidence submitted by the government.

The undisputed evidence shows that the information at issue is confidential within the meaning of Exemption 4 and was therefore properly redacted by the U.S. Food and Drug Administration (FDA). Plaintiff concedes that the egg industry is highly competitive, and that the redacted information can be used to form an accurate view of a farm's production capacity. *See* ER 8. In nevertheless urging that the information should be disclosed because it is not the *only* information that may be relevant to competitors in formulating a bid, plaintiff "ignores the fact that competitors can acquire or accurately estimate other pieces of information to combine with the totality of the redacted information to cause competitive harm," ER 11, and it misapprehends the standard for confidentiality explained in *Lion*

*Raisins, Inc. v. Department of Agriculture*, 354 F.3d 1072, 1081 (9th Cir. 2004). Under that standard, disclosure need not give a competitor *all* potentially relevant information, but rather only enough to likely cause a substantial harm. *See id.* In such a highly competitive market, even the disclosure of limited information may satisfy that standard. *See id.* Moreover, requiring disclosure in these circumstances would likely deter producers from voluntarily providing such information to FDA in the first place, thereby undermining the agency's ability to obtain this and other information important to its public-health mission.

### STATEMENT

**A.** FOIA Exemption 4 protects from disclosure "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). With respect to information that a party is required to disclose to the government, this Court has held that information is confidential if there is "actual competition" in the relevant market and disclosure of the information is likely to "cause substantial harm to the competitive position of the person from whom the information was obtained." *Lion Raisins, Inc. v. Department of Agric.*, 354 F.3d 1072, 1079 (9th Cir. 2004) (quotation marks omitted). As discussed below, the Court has held open the possibility that a

2

different standard may apply to information that a party voluntarily provides to the government. *See Frazee v. U.S. Forest Serv.*, 97 F.3d 367, 371-72 (9th Cir. 1996).

**B.** In December 2011, plaintiff Animal Legal Defense Fund (ALDF) submitted a FOIA request to FDA seeking certain records relating to egg-production farms in Texas. ER 818-19, 847. FDA released hundreds of pages of records in response to the request, including copies of Establishment Inspection Reports describing findings made at specific facilities. Pursuant to Exemption 4, FDA redacted from those pages the (1) total hen population; (2) number of hen houses; (3) number of floors per house; (4) number of cage rows per house; (5) number of cage tiers per house; and (6) number of birds per cage.[1] ER 821. The records at issue include information from twelve farms owned by six different companies.

ALDF filed suit in August 2012, seeking disclosure of the redacted information. The district court first denied plaintiff's motion for discovery with respect to public availability of the redacted information, noting that FDA's declarants had provided substantial evidence regarding the extent to which the information is guarded, and that plaintiff failed to identify any basis for calling into question the declarants' statements. ER 68, 70.

---

[1] FDA also made other redactions pursuant to Exemptions 3 and 6, 5 U.S.C. § 552(b)(3), (6). ER 821. Those redactions are not at issue in this litigation.

3

The court then granted summary judgment for FDA with respect to all but one category of information, concluding that the evidence showed a likelihood of competitive harm in the form of underbidding with respect to egg sales in the event the redacted information was disclosed. ER 16. In holding that the information was properly redacted, the court identified no disputed issue of material fact.

The court first noted that "[t]here is no dispute that there is actual (indeed robust) competition in the relevant market," or that "the redacted information may be used to calculate an egg farm's production capacity." ER 8. In addition, FDA's declarants explained that "competitors can use accurate estimates of production capacity to underbid the egg producers at issue in this case and lure customers away." ER 9 (citing the myriad statements by FDA's declarants supporting this contention). Although "[p]laintiff's expert opine[d] that one would need to know cost and profit information to estimate a competitor's bid" with precision, ER 10, plaintiff "ignore[d] the fact that competitors can acquire or accurately estimate other pieces of information to combine with the totality of the redacted information to cause competitive harm," ER 11. "While Plaintiff is correct that other information beyond the redacted information is needed to undercut competitors, Defendant has shown that such other information can be estimated from other publicly available

sources, so competitors could obtain the information that Plaintiff's expert says is needed to combine with the redacted information." ER 11.

In addition, the court found no evidence to support plaintiff's contention that the redacted information is already publicly available. ER 15. The court thus concluded, based on the undisputed evidence, that disclosing even the limited information at issue "would allow others to infer important competitive information." ER 14 (discussing *Lion Raisins*, 354 F.3d at 1081). Because summary judgment was appropriate on this basis, the court did not separately consider the other types of competitive harm identified by the government. ER 7-8.

**C.** A panel of this Court affirmed, holding that the district court did not clearly err in concluding that disclosure of the redacted information would likely cause substantial competitive harm. *ALDF v. FDA*, 819 F.3d 1102, 1108 (9th Cir. 2016). The panel explained that, "[a]lthough the information sought may not provide a national egg producer with every piece of information that it would consider before entering a new market, knowing the production capacity of potential competitors could make the decision of whether or not to enter a competitor's market easier." *Id.* For example, "[b]y becoming aware of potential limitations in its competitors' production capabilities, a national producer could decide to focus all its resources on egg markets in which it could out-produce local competitors—whether

in terms of efficiency, price, or total quantity." *Id.* "[I]n view of the extensive FDA affidavits," the panel saw "no clear error" in the district court's decision. *Id.* at 1109.

The panel was "likewise unpersuaded by Plaintiff's argument that the redacted information is already publicly available and, therefore, cannot be considered likely to cause substantial competitive harm. The sought-after data is more detailed and more specific than anything currently available in the public domain. For that reason, Plaintiff's argument fails." *ALDF*, 819 F.3d at 1109 n.2 (citing *Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007).

In a per curiam concurring opinion, the panel questioned the practice of "allow[ing] the district court to make factual findings" in FOIA cases and then "review[ing] those findings for clear error," *ALDF*, 819 F.3d at 1110, noting that "[d]e novo review would be consistent with [the Court's] usual summary judgment standards," *id.* at 1111. Here, the panel asserted, "[t]he district court ultimately decided that the FDA's declarations were more persuasive than those submitted by Plaintiff. But the district court was in no better position to make that determination at summary judgment than we are on appeal." *Id.* at 1112. The concurrence concluded that, "if ordinary principles applied, summary judgment would not be appropriate" in this case "because the record contains a disputed issue of material fact, and we would reverse and remand for further proceedings." *Id.*

6

## ARGUMENT

### There Are No Disputed Issues of Material Fact, and Summary Judgment for the Government Was Thus Appropriate Under Any Standard.

**A.**  Further review is unwarranted in these circumstances because the outcome of this case does not turn on the standard of review.  *Cf. Maricopa Audubon Soc'y v. U.S. Forest Serv.*, 108 F.3d 1082, 1085 (9th Cir. 1997) (finding it unnecessary to resolve this question where the outcome would be the same under either standard).  Contrary to the panel's suggestion, there are no disputed issues of material fact, and summary judgment for the government was appropriate under even the standard for which plaintiff now advocates.

The mere fact that plaintiff has argued that the redacted information is not likely to cause substantial competitive harm and submitted declarations that repeat that conclusion does not serve to create a triable issue.  The substance of the parties' declarations must be considered to determine whether, in their particulars, the information provided therein creates a dispute with respect to any fact material to the analysis.  The district court undertook that inquiry, and it found no such conflict.  Summary judgment was thus appropriate even under ordinary summary judgment principles.

**1.**  The undisputed evidence shows that disclosure of the redacted information would facilitate underbidding with respect to egg sales.  As the district

7

court observed, there is no dispute that the egg industry is highly competitive, or that egg producers can use the information at issue to form an accurate view of a farm's production capacity. ER 8. There is likewise no dispute that the redacted data, which includes information about the layout and structure of a farm's hen houses, provides important information about the relative efficiency of a farm's production processes. *See* ER 839.

The government's declarants offered substantial evidence that incremental information about a farm's efficiency and production capacity could be used by competitors to the detriment of the producer whose information is disclosed. "The factors most important to the competitive position of an egg farm" include "its production capacity (the number of eggs it can produce in a day), and how efficient the farm is." ER 774. If disclosed, this production and efficiency information would assist competitors in determining whether and how to enter a producer's regional market to compete for customers. *See* ER 774, 839-40.

The evidence submitted by plaintiff does not undermine the government's contention that the redacted information could be used by competitors in these ways. Instead, plaintiff's declarant asserts that production capacity is not the *only* information that might be relevant to a competitor in deciding how best to compete, emphasizing that "the production rate of a firm is not enough to *fully* determine the

8

price of eggs on a given market," and that other variables are also relevant. ER 114 (emphasis added). But even if true, this statement is not material to the analysis because Exemption 4 does not require the government to show that disclosure would give competitors perfect information.

This Court's decision in *Lion Raisins, Inc. v. Department of Agriculture*, 354 F.3d 1072 (9th Cir. 2004), makes clear that information disclosed to competitors need not be complete to present a likelihood of substantial competitive harm. There, the Court held that disclosure of the "limited information" the plaintiff sought "would allow [it] to infer critical information about its competitors' volume," including the amount and type of raisins being prepared for market, which could in turn be used in making strategic attempts to outbid those competitors. *Id.* at 1081. The plaintiff could use the information "to its advantage by cutting its prices for the types of raisins its competitors pack in large volumes in order to underbid them." *Id.* The Court nowhere suggested that such information would be relevant only if the plaintiff could additionally determine with precision the price at which its competitors' raisins were being sold. In the context of the highly competitive raisin market, even incremental information could present a significant advantage and was thus subject to withholding pursuant to Exemption 4.

9

Similarly, even "incomplete data could allow egg producers to make *more* accurate—if imperfect—estimates of their competitors' production capabilities and sales than they could without the redacted information." *ALDF v. FDA*, 819 F.3d 1102, 1109 (9th Cir. 2016). For example, "[b]y becoming aware of potential limitations in its competitors' production capabilities, a national producer could decide to focus all its resources on egg markets in which it could out-produce local competitors—whether in terms of efficiency, price, or total quantity." *Id.* at 1108. "Due to the competitiveness of the egg-production industry, where 'even a penny can make a huge difference,' even a slight upgrade in the accuracy of projections might have a large effect on competition." *Id.* at 1109. (quoting ER 839) (emphasis omitted). Thus, "[a]lthough the information may not afford egg producers their competitors' exact profit-per-egg statistics, the FDA need only establish, as the district court correctly noted, 'a likelihood of substantial competitive harm, not a certainty.'" *Id.*

Plaintiff's argument is further undermined by the undisputed fact that much of the additional information that may be relevant in determining a producer's prices is publicly available. *See* ER 11, 769, 839. As the district court observed, it is only by "ignor[ing] the fact that competitors can acquire or accurately estimate other pieces of information to combine with the totality of the redacted information" that

10

plaintiff is able to argue that disclosure does not present a likelihood of harm in these circumstances. ER 11. Plaintiff likewise ignores the fact that the redacted data provides valuable information about the efficiency of the farms' production processes, which is further relevant in estimating price. *See* ER 839.

Plaintiff similarly failed to create a disputed issue in asserting that producers routinely disclose the type of information at issue. To support that contention, plaintiff submitted over two hundred pages of articles and other materials that disclose certain egg-producer information. *See* ER 144-411. But those materials only underscore the fact that the redacted information is *not* publicly available.

As the panel observed, "[t]he sought-after data is more detailed and more specific than anything currently available in the public domain." *ALDF*, 819 F.3d 1109 n.2. For example, "[w]hile some [of plaintiff's] Exhibits contain estimated or aggregate summary data related to Cal-Maine's operations as a whole, none of the Exhibits reveal the date and farm specific confidential information about specific Cal-Maine houses and production facilities as set forth in the [inspection reports]." SER 21. Plaintiff has failed to demonstrate that any of the specific data redacted by FDA has been publicly disclosed. *See* ER 15, 776-77; SER 9-19, 21-23.

As the foregoing shows, when the particulars of the parties' declarations are considered, there is no dispute with respect to any fact that is material to the legal

question in this case. Summary judgment was therefore appropriate, and the district court's judgment should be affirmed under any standard of review.

**2.** The district court's judgment could also be affirmed on a second theory of competitive harm that plaintiff continues to ignore. The government submitted undisputed evidence that the redacted information, if disclosed, could be used to disrupt farm sales. *See* ER 8. "[T]he redacted information reveals the inventory of the egg producer," and much of that information is of a type that is "considered in the purchase price" negotiated by the parties. SER 26. A competitive bidder could use the redacted information in context of a farm sale "to offer better inventory for the same price or equivalent inventory for a better price and thereby harm the competitive position of the selling egg producer." *Id.*

One of plaintiff's declarants touched upon the subject of farm sales, but without responding to the substance of the government's evidence. The declarant explains that sales of small farms are often motivated by generational milestones or financial or strategic considerations. ER 129-30. But this nonexhaustive list of reasons why a producer may decide to sell is unresponsive to the point that the redacted information is of a type that is considered a farm's purchase price, and that a competitor familiar with the inventory of a farm whose sale is underway may see an opportunity to make a competitive bid to sell its own facilities—an opportunity that

would not exist but for the disclosure of the redacted information. Plaintiff offers nothing to counter FDA's evidence that disclosure of this information would likely cause substantial competitive harm to producers seeking to sell their farms.

Although the district court did not reach this issue, the Court can—and should—affirm on any grounds supported by the record. *See Glick v. Edwards*, 803 F.3d 505, 508 (9th Cir. 2015).[2]

**B.** One additional issue further counsels against rehearing in this case. There is uncertainty among the courts of appeals as to the correct standard to apply in assessing confidentiality in Exemption 4 cases. Although this question is one the Court should consider, it should do so in a case in which the standard is dispositive and the issue is squarely presented.

Some courts apply one test of confidentiality when information is voluntarily disclosed to the government and another standard when the disclosure is compelled.

---

[2] As the foregoing shows, a remand in this case would almost certainly be futile. The district court could again grant summary judgment for the government based on the farm-sale theory, with respect to which there are no disputed issues of material fact. Or the court could hold a bench trial (a fairly extraordinary measure in a FOIA case). But plaintiff has not suggested any additional evidence that it would introduce to counter the government's testimony that disclosure of the redacted information would facilitate underbidding. Indeed, the district court has already denied plaintiff's motion for discovery, ER 70, and the panel affirmed that ruling, *ALDF*, 819 F.3d at 1109. For these reasons, the bench trial would likely favor the government, and the district court's factual findings would at that point be reviewed on appeal for clear error. In either scenario, a remand would put the parties to considerable expense for no evident purpose.

For example, when disclosure is mandatory, the D.C. Circuit asks whether releasing the information to the public would likely cause a substantial competitive harm.  *See National Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 770 (D.C. Cir. 1974). But when disclosure is voluntary, the court asks whether the information "is of a kind that would customarily not be released to the public by the person from whom it was obtained."  *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 879 (1992) (en banc), *cert. denied*, 507 U.S. 984 (1993).  This Court has applied the *National Parks* standard for mandatory disclosures but has not determined what standard should apply when information has voluntarily been provided to the government—as happened in this case.  *See Frazee v. U.S. Forest Serv.*, 97 F.3d 367, 371-72 (9th Cir. 1996).  For the reasons explained above, the undisputed evidence in this case supports withholding under either standard.

As the government has elsewhere explained, Exemption 4's text and the plain meaning of the term "confidential" more naturally suggest that information should be withheld as confidential consistent with the standard set forth in *Critical Mass*— *i.e.*, "if it is of a kind that would customarily not be released to the public by the person from whom it was obtained."  *See* U.S. Br. in Opp. at 9-13, *New Hampshire Right to Life v. Department of Health & Human Servs.*, 136 S. Ct. 383 (2015) (No. 14-1273) 2015 WL 4550358.  That standard should apply regardless of whether the

14

information was disclosed to the government on a voluntary or mandatory basis; the statute nowhere suggests that the meaning of "confidentiality" should depend upon the circumstances of the disclosure.

Because the undisputed evidence shows that the information plaintiff seeks is confidential under either standard, it is unnecessary to resolve this issue here. If the Court were nevertheless to grant rehearing, however, the government would urge the Court also to consider the appropriate standard for assessing confidentiality under Exemption 4, and to reject the "convoluted test that rests on judicial speculation about whether disclosure will cause competitive harm" in favor of an interpretation that reads the word confidential "according to its ordinary meaning." *New Hampshire Right to Life v. Department of Health & Human Servs.*, 136 S. Ct. 383, 383-84 (2015) (Thomas, J., dissenting from denial of cert.).

## CONCLUSION

For the foregoing reasons, the petition for rehearing en banc should be denied.

15

Respectfully submitted,

BENJAMIN C. MIZER
  *Principal Deputy Assistant Attorney*
  *General*

BRIAN STRETCH
  *United States Attorney*

MICHAEL S. RAAB
<u>s/ Lindsey Powell</u>
LINDSEY POWELL
  (202) 616-5372
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7237*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., NW*
  *Washington, DC 20530*

JUNE 2016

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief is proportionately spaced, has a typeface of 14 points or more, and does not exceed the fifteen-page limit established by this Court's order of May 27, 2016.


s/ Lindsey Powell
LINDSEY POWELL

## CERTIFICATE OF SERVICE

On June 17, 2016, I electronically filed the foregoing Brief for Defendants-Appellees with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


s/ Lindsey Powell
LINDSEY POWELL